(Not for Publication)                                        (Docket Entry No. 3)

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## CAMDEN VICINAGE

_____
                                        :
S.W. INDIVIDUALLY AND O/B/O V.W.,  :
                                        :
            Plaintiff,                  :        Civil No. 05-0043 (RBK)
                                        :
      v.                                :        **OPINION**
                                        :
BRIDGETON BOARD OF EDUCATION,  :
                                        :
            Defendant.                  :
_____:


**KUGLER**, United States District Judge:

        Presently before the Court is Defendant Bridgeton Board of Education's (Bridgeton's)

Cross-Motion for Summary Judgment on Plaintiff's claim for expert fees and costs under the

Individuals With Disabilities Education Act, 20 U.S.C. § 1400 et seq.  After reaching a

settlement agreement with Bridgeton regarding her son's educational placement in the Bridgeton

School District, Plaintiff Sharon Willingham ("S.W.") filed this Complaint seeking the costs and

fees associated with the services of Tracee Edmondson.  S.W. had previously retained

Edmondson as a lay advocate and consultant to assist S.W. in obtaining an appropriate

educational placement for her son.  In the present motion, Bridgeton argues that it is entitled to

summary judgment on S.W.'s claims for costs and fees because (1) S.W. allegedly seeks

payment for fees incurred by Edmondson as a lay representative; (2) Edmondson is allegedly

engaged in the unauthorized practice of law; and (3) S.W. has allegedly failed to demonstrate the

reasonableness of the fees sought.  For the reasons discussed below, this Court will deny

Bridgeton's motion without prejudice.

## I. BACKGROUND

Plaintiff Sharon Willingham (S.W.) resides in Bridgeton, New Jersey with her school-aged son, V.W. (Compl. ¶ 3.)  In February 2003, V.W. was enrolled as a sixth grader at Bridgeton Middle School. (See Def. Mem. at 1.)  At that time, S.W. retained "consultant, Total Envolvement, to pursue educational remedies with respect to [her] son." (Compl. ¶ 6.)  Tracee Edmondson is a non-lawyer and the "founder and president of Total Envolvement LLC, a consulting, training and advocacy service provider." (Edmondson Affidavit, attached to Complaint, ¶ 1.)  From March 2003 through March 2004, Edmondson allegedly performed services as the "consultant and advocate" for S.W., on behalf of her son, V.W. (See Edmondson's Bill of Services, attached to Complaint.)

On February 21, 2003, V.W.'s parents, Sharon and Vincent Willingham, wrote a letter to V.W.'s Child Study Team Case Manager expressing concerns about V.W.'s "academic failure" and requesting an immediate reassessment of V.W. by an "independent team."  (See 2/21/03 Letter, attached to Def. Mem. at Exhibit A.)  On March 19, 2003, Jerry W. Benfer, Bridgeton's Director of Special Support Services, wrote a letter in response to the Willinghams' request. Benfer's letter denied the request for an independent evaluation and notified the parents that the school district was in favor of filing for mediation and a due process hearing. (See 3/19/03 Letter, attached to Def. Mem. at Exhibit C.)  Sharon and Vincent Willingham then wrote another letter on March 20, 2003 specifically requesting that the Alfred I. Dupont Hospital for Children in Wilmington, Delaware conduct an independent evaluation of their son. (See 3/20/03 Letter, attached to Def. Mem. at Exhibit E.)

A few days earlier, on March 14, 2003, Edward G. Haldeman, the Case Manager for

V.W.'s Child Study Team, requested an individualized education program ("IEP") meeting with

V.W.'s parents for Tuesday, April 8, 2003. (See 3/14/03 Notice, attached to Def. Mem. at

Exhibit F.)  Although V.W.'s parents did not attend the IEP meeting, the parties to this action did

appear for an administrative hearing before Administrative Law Judge Joseph F. Fidler on April

28, 2003.  On the day of the scheduled hearing, the parties reached a settlement agreement, which

was then signed by ALJ Fidler. (See Settlement Order dated 4/28/03, attached to Def. Mem. at

Exhibit G.)  The settlement terms provided:

> 1.  Petitioner Board of Education and respondents agree that V.W. will be referred
> to the Gloucester County Special Services District for a learning disabilities
> evaluation and a neurological evaluation.
>
> 2.  Petitioner Board of Education will forward a referral to Dr. Melini in Vineland,
> New Jersey, to provide V.W. with a neurodevelopmental evaluation.
>
> 3.  An auditory central processing evaluation of V.W. will be done by Mrs. Loder
> of Bridgeton Special Services, so long as Mrs. S.W. is comfortable with using her.
> Alternatively, petitioner Board will refer V.W. to an outside person to do this
> evaluation.

(Settlement Order dated 4/28/03, attached to Def. Mem. at Exhibit G, at 2.)

On January 3, 2005, S.W. filed the Complaint in the present action, seeking to recover the

costs and fees associated with Tracee Edmondson's efforts to obtain an appropriate educational

placement for V.W.  In her affidavit, Edmondson states that she "reviewed all papers and

documents relating to V.W., provided input as required, attended I.E.P. meetings pursuant to the

settlement terms, attended the final placement, and attended the hearing proceeding."

(Edmondson's Affidavit, attached to Complaint, ¶ 4.)  Edmondson alleges that her services for

S.W. amounted to 69.5 hours of work at an hourly rate of $250, for a total fee of $17,375. (See

Edmondson's Bill of Services, attached to Complaint.)

Shortly after initiating this lawsuit, S.W. then filed a "motion for awarding fees and

related costs" as well as a motion for summary judgment.  In response, Bridgeton filed the instant cross-motion for summary judgment alleging that (1) S.W. cannot seek payment of fees for legal services performed by Edmondson as a lay advocate; (2) Edmondson is engaged in the unauthorized practice of law; and (3) S.W. has failed to demonstrate the reasonableness of the fees sought.  In an Order dated August 2, 2005, this Court denied Plaintiff's motion for fees and costs, as well as Plaintiff's motion for summary judgment, because S.W. failed to present any evidence of the reasonableness of the fees and costs sought in those motions. (See Order dated 8/2/05, D.E. # 5.)

To date, S.W. has not filed any formal opposition papers to the Defendant's cross-motion for summary judgment, although she has filed two documents which appear to be in response to Defendant's motion.  First, S.W. filed what seems to be an unsworn, notarized affidavit in which S.W. attempts to grant Tracee Edmondson "power-of-attorney in this immediate matter." (See S.W. Affidavit dated 6/29/05, D.E. # 4, ¶ 1.)  In the same document, S.W. admits that Tracee Edmondson is "the sole and true party in this matter," and she also (1) requests a judgment for the relief requested in the Complaint, and (2) demands that the Defendant "cease and desist from sending correspondence to an address with which [S.W.] has not authorized it to use."[1] (S.W. Affidavit dated 6/29/05, D.E. # 4, ¶¶ 1, 5, 8, 9.)  Second, S.W. filed a signed, but unsworn document which (1) cites case law on the issue of reasonable costs and fees; (2) states that S.W. is unaware of any independent consultant or attorney in the Cumberland County Area who provides services comparable to those that Tracee Edmondson provides on a contingency basis; (3) states that Tracee Edmondson does not advertise her services; and (4) argues that "summary

---

[1]Apparently, S.W. was directing the Defendant to send all court documents to Edmondson's work address at the Total Envolvement Office, which is listed as S.W.'s address of record on the case docket.

judgment should have been granted in this matter." (S.W. Statement dated 10/5/05, D.E. # 1, ¶¶ 1-6.)  This document also attaches an unsworn, notarized affidavit of one Marguerite Lipps, who states that (1) she was an employee of the Bridgeton Board of Education for over 37 years; (2) she previously engaged the services of Tracee Edmondson; (3) she is unaware of any consultant comparable to Tracee Edmondson; (4) in her opinion, Ms. Edmondson provides more extensive services than that of an attorney; and (5) Ms. Edmondson's fee of $250 per hour is a reasonable rate in "Bridgeton/Cumberland County" for the services she provides. (Marguerite Lipps Affidavit, attached to S.W. Statement, D.E. # 4, ¶¶ 1-5.)

To decide the present motion, the Court must first address whether Edmondson is engaged in the unauthorized practice of law, and second, whether S.W. is entitled to payment for the expert fees under the IDEA.  For the reasons stated below, this Court will deny without prejudice Bridgeton's cross-motion for summary judgment.

## II.  STANDARD OF REVIEW

Summary judgment is appropriate where the Court is satisfied that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986).  A genuine issue of material fact exists when "the evidence is such that a reasonable jury could find for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The burden of establishing the nonexistence of a "genuine issue" is on the party moving for summary judgment. Celotex, 477 U.S. at 330.  The moving party may satisfy this burden by either (1) submitting affirmative evidence that negates an essential element of the nonmoving party's claim; or (2) demonstrating to the Court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's case. Id. at 331.  If the

moving party has not fully discharged its initial burden, its motion for summary judgment must

be denied. <u>Id.</u> at 332. If the moving party satisfies its initial burden, the nonmoving party "must

set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

## III.   DISCUSSION

### A. Unauthorized Practice of Law

In its cross-motion for summary judgment, the Defendant argues that "the filing of this

action constitutes the practice of law by lay advocate Tracee Edmondson and requires the

complaint to be dismissed." (Def. Mem. at 6.)  In particular, Defendant alleges that Tracee

Edmondson, rather than S.W., was the "real preparer/author" of the documents filed in this

lawsuit, as well as the documents filed in three other lawsuits brought before Judges Simandle,

Irenas, and Wolfson in this jurisdiction.[2] (Def. Mem. at 12-13.)  Therefore, before turning to the

merits of S.W.'s claim for reasonable costs and fees pursuant to 20 U.S.C 1415(i)(3)(B), this

Court must first address whether Ms. Edmondson has engaged in the unauthorized practice of

law by preparing the documents filed in this case under S.W.'s name.

The rules governing the practice of law in U.S. courts are clear that non-lawyers, like Ms.

Edmondson, are not permitted to represent parties in federal court. See <u>U.S. v. Wilhelm</u>, 570

F.2d 461, 465 (3d Cir. 1978); <u>Lutz v. Lavelle</u>, 809 F. Supp. 323, 325 (M.D. Pa. 1991).  Parties to

a federal action are entitled to "plead and conduct their own cases personally or by counsel," but

not by way of a lay representative. 28 U.S.C. §1654; <u>see</u> Fed. R. Civ. P. 11(a) (requiring that all

pleadings, motions, and submissions to federal courts must be signed by an attorney of record or

---

[2] The other lawsuits include (1) <u>E.R. v. Vineland Bd. Of Educ.</u>, Civil No. 03-1121 (JBS);
(2) <u>L.L. v. Vineland Bd. of Educ.</u>, Civil No. 04-521 (JEI); and (3) <u>P.R. et al. v. Bridgeton Bd. of
Educ.</u>, Civil No. 05-42 (FLW).  The specifics of these three similar cases are discussed in more
detail below.

by the unrepresented party himself/herself).  In this jurisdiction in particular, the relevant rules provide that a non-lawyer may not act as the legal representative or advocate for a party.  See L. Civ. R. 101.1 (governing admission to practice in the District of New Jersey); Elizabeth Teachers Union, AFT Local 733 v. Elizabeth Bd. of Educ., No. 90-3343, 1990 W.L. 174654, at *5 (D.N.J. Nov. 8, 1990) (noting that a non-attorney cannot represent a party in New Jersey).  Any attempt by a non-lawyer to do so constitutes the unauthorized practice of law.

### 1.  History of Similar Cases

In support of its allegations against Edmondson, Bridgeton compares the facts of this case with the facts of three other cases in which a party sought fees relating to Edmondson's services. Those cases, like the present matter, are all situations where the plaintiffs sought payment for the fees and costs associated with Edmondson's efforts to obtain an appropriate educational placement for their children.  A brief, chronological review of those cases will provide the relevant background and context for the Court's determination of the instant motion.

In E.R. v. Vineland Bd. of Educ., Civ. No. 03-1121 (JBS) (D.N.J. 2003), Judge Simandle found that Edmondson had been engaged in the unauthorized practice of law.  There, Edmondson filed the complaint asserting that plaintiff E.R. authorized her to initiate the action to seek payment for fees incurred by Edmondson in consulting and advocating on behalf of E.R. and her child. E.R. v. Vineland Bd. of Educ., No. 03-1121, slip op. at 3 (D.N.J. Nov. 10, 2003). In that case, Edmondson signed the plaintiff's papers all in Edmondson's name; however, because Edmondson was not a parent of a prevailing party in the administrative process, she did not have standing to bring the case on her own behalf. Id. at 13, 15.  In addition, because she was not an attorney, Edmondson likewise could not have represented the parents of the prevailing party in any federal action to obtain costs and fees under the IDEA. See id. at 15.  The Court also noted

that the IDEA does not allow Edmondson "to seek fees and costs in the parent's stead, pretending the parent has requested her to do so." Id. at 15-16.  This was particularly true in E.R. because E.R. actually submitted her own affidavit stating that she did not authorize Edmondson to file the suit on her behalf. Id. at 2.  Therefore, the complaint was dismissed and Edmondson was reported to New Jersey's Committee on the Unauthorized Practice of Law. E.R, No. 03-1121, at 2-3; see 11/10/03 Letter from Judge Simandle to Chairman of Committee on the Unauthorized Practice of Law, attached to Def. Mem. at Exhibit 1.

In a similar case, L.L. v. Vineland Bd. of Ed., Civ. No. 04-521 (JEI) (D.N.J. 2004), Judge Irenas granted summary judgment in favor of the defendant on grounds that Edmondson had been engaged in the unauthorized practice of law. L.L. v. Vineland Bd. of Ed., No. 04-521, ¶ 7 (D.N.J. Mar. 24, 2004) (order granting summary judgment).  In L.L., the plaintiff  sought fees and costs, pursuant to 20 U.S.C. § 1415,  for Edmondson's services related to obtaining an appropriate educational placement for L.L.'s child. Id. ¶ 6.  In that matter, the complaint was filed in the name of the parent (L.L.) and the parent signed the court documents. Id. ¶ 11.  Nevertheless, the court found that Edmondson, rather than L.L., had drafted the complaint. Id. ¶ 12.  In L.L's affidavit as well as the consulting agreement between L.L. and Edmondson, L.L. acknowledged that the complaint would be filed "on her behalf" suggesting that L.L. did not prepare the document herself. Id.  L.L. also informed the court that the motion papers had been prepared at the "offices of Total Envolvement." Id.  In addition, the address given for L.L. on the filed papers was actually Edmondson's business address at Total Envolvement.  Moreover, the similarities between the initial filings submitted in L.L. and those submitted in E.R. were too numerous to constitute a mere coincidence.  The titles, captions, prefatory language, hand-drawn caption box, substantive paragraphs, and ad damnum clauses were either identical or remarkably

similar. Id.  Therefore, the court found that even taking all inferences in a light most favorable to

plaintiff, it was clear that Edmondson prepared L.L's motion and was engaged in the

unauthorized practice of law. Id.  As a result, the Court granted the defendant's motion for

summary judgment. Id.

On appeal, the Third Circuit vacated and remanded L.L. on procedural grounds. L.L. v.

Vineland Bd. of Educ., No. 04-2022, 2005 WL 943527, at *3 (3d. Cir. 2005).  As a preliminary

matter, the Court agreed with the district court's observation that questions concerning the

preparation and filing of L.L.'s motion posed a threshold issue for the court that precluded it from

dealing with the substantive motion itself (i.e. L.L.'s request for reasonable costs and fees). Id. at

*2.  However, the Third Circuit found that the district court "erred when it decided the threshold

issue by granting summary judgment based on its own determination of a factual issue regarding

a disputed allegation of the unauthorized practice of law." Id.  In other words, in L.L., there was a

factual issue regarding Edmondson's alleged unauthorized practice of law because, unlike the

parent in E.R., L.L. signed the motion papers in her own name, knew about the action taken on

her behalf, and agreed to the pursuit of fees and costs for Edmondson's services. Id.  In these

circumstances, the Court noted that "the question of Edmondson's alleged unauthorized practice

of law would have been best resolved in the context of a separate proceeding for injunctive relief

initiated by the Court or on a motion by the appellees, not by way of a summary judgment

proceeding on the underlying claim." Id.  Consequently, the Third Circuit vacated and remanded

the cause back to the district court.

Less than a year later, in P.R. v. Bridgeton Bd. of Educ., Civ. No. 05-42 (FLW) (D.N.J.

2006), Judge Wolfson addressed yet another motion seeking costs and fees associated with

Edmondson's services.  Much like the parents in E.R. and L.L., P.R. had retained Edmondson to

obtain better educational placements for her children. <u>P.R. et al. v. Bridgeton Bd. of Educ.</u>, No.
05-42, 2006 WL 231665, at *1 (D.N.J. Jan. 31, 2006).  After P.R. reached agreements regarding
her children's educational placements, the complaint was filed in P.R.'s name to obtain costs and
fees related to Edmondson's services. <u>See</u> <u>id.</u> at *2-3.  Like the plaintiff's filings in <u>L.L,</u> all
filings in <u>P.R.</u> were signed by a named plaintiff, rather than Edmondson. <u>Id.</u> at *5.  The plaintiffs
moved for fees and costs and the parties filed cross-motions for summary judgment. <u>Id.</u> at *3.
The defendant's motion argued that Edmondson was engaged in the unauthorized practice of law
because she was allegedly the person who prepared and filed the plaintiffs' court documents. <u>Id.</u>
at *4.

  In addressing whether Edmondson was engaged in the unauthorized practice of law, the
court noted the striking similarities between the exhibits, affidavits, and certificates of service in
both P.R.'s case and the current matter brought by S.W. before this Court.  In fact, Judge
Wolfson recognized that it appeared Edmondson had concurrently filed the complaints in the
<u>P.R.</u> and <u>S.W.</u> matters because both were filed on the same day in the same jurisdiction and bear
consecutive case numbers. <u>P.R.</u>, 2006 WL 231655, at *4.  In addition, the docket sheet in <u>P.R</u>,
much like the docket sheet in the current matter, listed Edmondson's business address at Total
Envolvement as the given address for the plaintiffs. <u>Id.</u>  Also, like S.W.'s affidavit which grants
Edmondson "power of attorney" in the pending matter before this Court, one of the plaintiffs in
the <u>P.R.</u> matter filed the same kind of document granting Edmondson "power of attorney" for
that civil action. <u>See</u> <u>id.</u>

  Although all of these striking similarities raised serious doubts as to whether the
documents in each case were actually prepared and filed by the plaintiffs in those matters, Judge
Wolfson did not grant defendant's summary judgment motion in <u>P.R.</u>  Relying upon the Third

Circuit's holding in <u>L.L.</u>, the court found that it would be inappropriate to grant summary judgment in favor of the defendant solely based on a disputed allegation regarding Edmondson's unauthorized practice of law. <u>Id.</u> at *5.  Therefore, Judge Wolfson denied the defendant's motion without prejudice and ordered the parties, including Edmondson, to appear before the court for questioning under oath regarding the filing and preparation of the plaintiffs' pleadings and motions in the <u>P.R</u> matter. <u>Id.</u>

### 2.  Bridgeton's Current Allegations Against Edmondson

With the foregoing caselaw in mind, the Court must address Bridgeton's accusations regarding Edmondson's alleged unauthorized practice of law in the present matter.  First, Bridgeton compares the "motions" filed in <u>E.R.</u>, <u>L.L.</u>, <u>P.R.</u>, and the present case to demonstrate that Edmondson prepared all four requests for fees and costs.[3]  Specifically, Bridgeton accurately notes that (1) paragraph 1 is exactly the same in the <u>E.R.</u>, <u>L.L.</u> and <u>P.R</u> motions and virtually identical to paragraph 1 in S.W.'s Complaint; (2) paragraph 10 of the <u>E.R.</u>, <u>L.L.</u> and <u>P.R.</u> motions is identical to paragraph 11 of S.W.'s Complaint; (3) paragraph 12 of the <u>L.L.</u> motion is identical to paragraph 11 of the <u>P.R.</u> motion; (4) paragraph 12 of the <u>E.R.</u> motion is identical to paragraph 14 of the <u>L.L.</u> motion and paragraph 13 of the <u>P.R.</u> motion and S.W.'s Complaint; and (5) the <u>ad damnum</u> clauses are virtually identical in all four cases. (<u>See</u> Exhibits 2, 3, 5 and 6, attached to Def. Mem.)  The abundance of identical language raises substantial doubt that the plaintiffs in all four cases coincidentally happened to use the same language in independently drafted documents.

Second, Bridgeton points out that the same three page memorandum of law is attached to both S.W.'s Complaint and P.R.'s motion for fees and costs. (<u>See</u> Exhibits 5 and 6, attached to

---

[3] In <u>E.R.</u>, <u>L.L.</u>, and <u>P.R.</u>, the plaintiffs' complaint is actually labeled as a motion, whereas in <u>S.W.</u> the complaint is titled as a complaint.

Def. Mem.) The only difference between the two is that at the end of the memorandum attached to P.R.'s motion it states "Brief taken from the I.C.L.E. "  It is highly unlikely that two independent, pro se plaintiffs would have researched federal case law and drafted the same three page memorandum.  And, even if the brief was taken from I.C.L.E., it is almost equally unlikely that two unrelated, pro se plaintiffs would independently know what I.C.L.E. is, let alone have the ability to attend I.C.L.E. or obtain I.C.L.E. materials, and then attach the exact same I.C.L.E brief to substantially similar motions.

Third, Bridgeton compares the affidavit of S.W. in this matter with the affidavits of P.R. and Joshua Ridgeway ("J.R.") in the P.R. matter. (See J.R., P.R. and S.W. Affidavits, attached to Def. Mem. at Exhibits 8, 9, and 10.)  Specifically, (1) paragraph 1 is identical in the P.R. and S.W. affidavits and is substantially similar to paragraph 1 in the J.R. affidavit; (2) paragraph 2 of S.W.'s affidavit is substantially similar to paragraph 2 of the J.R. affidavit and is identical to paragraph 4 of the P.R. affidavit; (3) paragraph 4 of the S.W. affidavit is identical to paragraph 3 of the J.R. affidavit and paragraph 9 of the P.R. affidavit; (4) paragraph 5 of the S.W. affidavit is identical to paragraph 10 of the P.R. affidavit; (5) paragraph 6 of the S.W. affidavit is identical to paragraph 11 of the P.R. affidavit; and (6) in all three affidavits the affiants refer to the motion for fees and costs as a "complaint."   These similarities appear too striking to be mere coincidence.

Fourth, Bridgeton highlights the fact that the certificate of service attached to P.R.'s motion for fees and costs is identical to the certificate of service attached to S.W.'s motion for fees and costs in this matter, except for the case captions. (See P.R. and S.W. Certificates of Service, attached to Def. Mem. at Exhibits 11 and 12.)  It is strange that both plaintiffs used the exact same language and formatting.  It is also remarkable that the motion papers in both cases

were filed on the same day, ostensibly by two separate individuals, yet P.R.'s certification is dated March 9, 2004 and S.W.'s certification is dated December 18, 2004.

Fifth, Bridgeton explains the surprising similarity between P.R.'s affidavit and a February 2, 2005 letter from S.W. to this Court. (See P.R Affidavit and 2/2/05 Letter from S.W., attached to Def. Mem. at Exhibits 9 and 13.)  In P.R.'s affidavit, she states that the school district's solicitor received $1,500 per hour for services rendered, which she calculated by dividing his $35,000 salary by the 24 school board meetings that each lasted approximately one hour. (P.R. Affidavit, attached to Def. Mem. at Exhibit 9, ¶ 9.)  In S.W.'s February 2, 2005 letter, she references the district attorney's allegedly "excessive" salary and relies upon the same calculations purportedly discovered by P.R. and set forth in her affidavit. (See 2/2/05 Letter from S.W., attached to Def. Mem. at Exhibit 13, ¶ 2.)  Given that the district attorney has submitted an affidavit in this matter attesting that his fees relating to S.W.'s case only amounted to $720, it is remarkable that S.W. would reference his fees as "excessive" much less in the same terms used by P.R. in her affidavit. (See Affidavit of Paul Kienzle, Jr., attached to Def. Mem. at Exhibit14.)

In addition to Bridgeton's observations regarding Edmondson's involvement in this case, the Court also notes that in her second affidavit, S.W. states that she believes that Edmondson is "the sole and true party" in this matter. (See S.W. Affidavit, D.E. #4, ¶ 5.)  However, as noted above, Edmondson has no standing to bring a suit on her own behalf for an award of fees because she is not the parent of a prevailing party in the administrative process. See 20 U.S.C. 1415(i)(3)(B)(i)(I).  In other words, under the law, Edmondson cannot be the "sole and true" plaintiff in this matter.

Based upon all of this evidence, the Court has serious doubts as to whether S.W. has personally prepared and filed her own documents in this case.  Nevertheless, as the Third Circuit

stated in <u>L.L.</u>, it would be improper to grant summary judgment in favor of the defendant on the

Court's own determination as to a potentially disputed factual issue.  Therefore, just as Judge

Wolfson ordered in <u>P.R.</u>, this Court will deny the Defendant's motion without prejudice and will

similarly direct the parties, including Edmondson, to appear before the Court at 9:30 a.m. on

March 17, 2006 to answer questions under oath regarding the preparation and filing of S.W.'s

motions, pleadings, affidavits, and other legal filings in this case.  After hearing from the parties

on this issue, the Court will be in a better position to rule upon whether Edmondson has been

engaged in the unauthorized practice of law in this matter.

**B.  S.W.'s Substantive Claim for Fees and Costs Under the IDEA**

As mentioned above, the Plaintiff's substantive cause of action arises under the

Individuals with Disabilities Education Act ("IDEA"). 20 U.S.C. § 1400 <u>et seq</u>. The IDEA

directs the state to provide each child with a "free and appropriate education" ("FAPE"). 20

U.S.C. § 1412(a)(1).  To ensure that a FAPE is provided, the statute requires the state to create an

individualized education program ("IEP") for each student with disabilities. <u>See</u> 20 U.S.C. §§

1412(a)(4), 1414(d).  If the parent of a child with disabilities is unsatisfied with the IEP created

for her child, she may request a due process hearing to resolve the issue.[4] 20 U.S.C. § 1415(f).

1.  <u>Representation at Special Education Hearings</u>

The IDEA and related federal regulations provide that a party to a due process hearing

regarding the educational placement of a disabled child may "be accompanied and advised by

---

[4]In addition, New Jersey regulations provide that when the parent of a child with
disabilities seeks an independent evaluation of that child, the district board of education may
initiate a due process hearing to determine that its evaluation of a particular child is final and
appropriate. <u>See</u> N.J.A.C. § 6A:14-2.5(c).  In the present case, the scheduled hearing regarding
V.W.'s educational placement was requested by the district board pursuant to these regulations.
(<u>See</u> 3/19/05 Letter from Benfer, attached to Def. Mem. at Exhibit C.)

counsel and by individuals with special knowledge with respect to the problems of children with disabilities." 20 U.S.C. § 1415(h)(1); 34 C.F.R. § 300.509(a)(1). In other words, federal law permits non-lawyer experts to participate as advisors in the hearing process.

By contrast, the New Jersey state regulations governing proceedings before the Office of Administrative Law ("OAL") go beyond the federal rules. In New Jersey, certain non-lawyers may "apply for permission to *represent* a party" at a contested hearing before the OAL, including non-lawyer "individuals *representing* parents or children in special education proceedings." N.J.A.C. § 1:1-5.4(a)(7) (emphasis added). For a non-lawyer to represent a party before the OAL, the lay applicant must (1) state at the hearing that "he or she is not a suspended or disbarred attorney and that he or she is not receiving a fee for the appearance," and (2) explain in a written notice how "he or she has knowledge or training with respect to handicapped pupils and their educational needs so as to facilitate the presentation of the claims or defenses of the parent or child." N.J.A.C. §§ 1-5.4(b)(1)(i), (b)(4)(iv).

In the present case, it appears that Edmondson took advantage of the New Jersey regulations and applied to represent Plaintiff pursuant to N.J.A.C. § 1:1-5.4(a). The settlement decision signed by ALJ Fidler on April 28, 2003 (the date of the scheduled hearing) states that Tracee Edmondson "appear[ed] pursuant to N.J.A.C. § 1:1-5.4(a)(7), for respondent." Based upon this statement in the ALJ's decision, it appears that Edmondson met the prerequisites for appearing as plaintiff's lay representative pursuant to N.J.A.C. § 1:1-5.4(a)(7). The ALJ's language establishes that Edmondson was not merely advising or accompanying at the hearing pursuant to the federal regulations, but rather, was acting as a representative pursuant to the New Jersey regulations.

## 2.  Award of Reasonable Attorneys' Fees to Prevailing Parties

In a proceeding brought under the IDEA, a prevailing plaintiff may recover reasonable attorney's fees and costs. 20 U.S.C. § 1415(i)(3)(B)(i)(I).  A prevailing plaintiff may also seek the costs and fees related to the services of experts and consultants. Arons v. N.J. State Bd. of Educ., 842 F.2d 58, 63 (3d Cir. 1988); B.K. v. Toms River Bd. of Educ., 998 F. Supp. 462, 476 (D.N.J. 1998).  To obtain the expenses associated with experts, the plaintiff must show (1) that the fees requested relate to the kind of expert services that are recoverable under the IDEA, (2) that the fees sought are reasonable, (3) that the plaintiff is a prevailing party within the meaning of the IDEA, and (4) that the expert's services were essential to the proceeding and to obtaining the relief sought. 20 U.S.C. § 1415(i)(3)(B)(i) (setting forth the reasonableness requirement and defining who may recover reasonable fees and costs as a "prevailing party"); Arons, 842 F.2d at 62-63 (distinguishing between compensable and noncompensable expert services under the IDEA); E.M. v. Millville Bd. of Educ., 849 F. Supp. 312, 317-18 (D.N.J. 1994)(noting that a prevailing plaintiff is entitled to expert fees only if the expert's services played a necessary role in the adjudication in plaintiff's favor); Field v. Haddonfield Bd. of Educ., 769 F. Supp. 1313, 1323 (D.N.J. 1991) (noting that an award of fees under the IDEA covers the reasonable expenses and fees of expert witnesses whose services were necessary to the plaintiff's case).

With respect to whether the requested expert fees are recoverable, the IDEA does not expressly authorize an award of fees to a lay expert acting as a party's representative. See Arons, 842 F.2d at 62-63.  In Arons, the Court found that the failure to provide explicitly for the collection of fees by a lay representative was not an inadvertent omission "because the states historically have exercised strict control over the professional conduct of attorneys." Id. at 63.  In other words, in the absence of explicit statutory language in the IDEA to the contrary, the court

was "not convinced that Congress intended to limit the states' traditional control over the practice of law." Id.  Therefore, because the IDEA is silent on the issue, it is up to state law to determine whether a party can collect fees incurred by a lay expert acting in a representative capacity.

The state law in New Jersey on the issue provides that, although a lay expert may represent a party at a due process hearing, a lay representative may not receive fees for that representation. N.J.A.C. § 1415(a)(7).  That is, the lay advocate may receive compensation for services performed as a consultant or witness, but may not receive compensation for services performed as a party's non-lawyer representative. See Arons, 842 F.2d at 62.  Thus, for S.W. to obtain payment for fees incurred by Edmondson, she must establish that no part of the fees sought is for Edmondson's work done in a representative capacity relating to the Plaintiff's special education proceedings.

Here, as mentioned above, Edmondson appeared as the Plaintiff's representative at the OAL hearing on April 28, 2003, and part of the bill for which Plaintiff now seeks payment includes Edmondson's time spent at that hearing.  Edmondson's bill reveals that she allegedly spent seven hours attending the OAL hearing at a rate of $250 an hour, for a total of $1750 in fees for that day alone.  However, it is clear that Edmondson cannot receive compensation for representing Plaintiff at the hearing. Id.; see also N.J.A.C. § 1415(a)(7).  In addition, Edmondson charges several hours worth of work for "correspondence on behalf of the plaintiffs." (See Edmondson's Affidavit of Services, attached to Complaint.)  Without knowing what correspondence Edmondson refers to it is difficult to determine whether such correspondence was written in a consultative or representative capacity, but there is certainly the possibility that some of these hours are non-compensable under N.J.A.C. § 1:1-5.4(b).  In any event, it is clear

that any of Edmondson's time spent in a representative capacity for Plaintiff is not compensable under New Jersey's regulatory scheme, and it is equally clear that Edmondson's bill does not in any way distinguish between noncompensable time as a lay representative and compensable time as a consultant or witness. In other words, although it appears that not all of Edmondson's fees are compensable, there is no way for the Court to determine what portion might be recoverable without someone separating Edmondson's time spent as a representative from her time spent as a consultant or witness. Therefore, summary judgment cannot be granted when there is a genuine issue of fact as to which hours were billed for consulting and which were billed for legal advocacy or representation.

In addition to demonstrating that the fees requested are recoverable, Plaintiff must also establish that the fees are reasonable. See 20 U.S.C. § 1415(i)(3)(B)(i). The reasonableness of fees is generally determined using the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rated. Hensley v. Eckerhart, 461 U.S. 424, 433 (1983); Field, 769 F. Supp. at 1324 (applying Hensley standard in a case brought under the precursor statute to the IDEA). It is the burden of the party seeking the fee award to produce evidence regarding the number of hours reasonably expended and the reasonable hourly rate. Hensley, 461 U.S. at 433. In turn, the reasonable hourly rate is computed according to the prevailing market rates in the community. S.D. v. Manville Bd. of Educ., 989 F. Supp. 649, 656 n.3 (D.N.J. 1998). The hourly rate for attorneys and/or experts must be established through affidavits by members of the community with skill and experience that is comparable to the expert in question. Id. at 656.

In the present case, S.W. has provided slim evidence to support the reasonableness of the fees requested. In her unsworn statement pertaining to reasonableness, S.W. contends that she is unaware of any consultant or attorney who provides services comparable to those of Edmondson

in the Bridgeton community. (S.W. Statement, D.E. #11, ¶ 4.) Along with that statement, S.W. also submitted an unsworn affidavit of Marguerite Lipps, an "employee of the Bridgeton Board of Education for over 37 years" who apparently is neither an attorney nor independent consultant capable of attesting to the prevailing market rates for educational consulting services. (See Lipps Affidavit, attached to S.W. Statement, D.E. #11, ¶ 1.)  Nevertheless, in Ms. Lipps' affidavit, she states that she (1) has used the services of Edmondson in the past, (2) is unaware of any other consultant who provides the same level of services as Edmondson, and (3) believes that Edmondson provides "more and extensive services than that of an attorney." (Lipps Affidavit, attached to S.W. Statement, D.E. #11, ¶¶ 2-4.)  Lipps then concludes that Edmondson's $250 per hour fee is reasonable in the Bridgeton community without providing any comparison to any other community rates.  (Lipps Affidavit, attached to S.W. Statement, D.E. #11, ¶ 5.)

By contrast, the attorney who handled the S.W. matter for Bridgeton submitted a sworn affidavit stating that he billed a total of 8 hours on the S.W. matter, at an hourly rate of $90, for a total of $720. (See A. Paul Kienzle, Jr. Affidavit, attached to Def. Mem. at Exhibit 14, ¶ 6.)  Mr. Kienzle further attested to the fact that he has been a licensed New Jersey attorney since 1971. (A. Paul Kienzle, Jr. Affidavit, attached to Def. Mem. at Exhibit 14, ¶ 2.)  Furthermore, as the district's solicitor, he likely has experience representing Bridgeton in many similar educational placement matters.  On these facts, the disparity between his bill and Edmondson's bill is alarming.

Nevertheless, even if the current numbers/amounts put forth by Edmondson are unreasonable, S.W. may still be entitled to some fee award for Edmondson's time as a consultant, if the Court finds that Plaintiff is a prevailing party and Edmondson's services were essential to the relief obtained by S.W.  Unfortunately, neither party has adequately briefed the

issues of whether (1) Plaintiff is actually a prevailing party within the meaning of the IDEA, or

(2) whether Edmondson's services played a necessary role in obtaining a favorable outcome for

S.W. in the administrative process.  Therefore, just as Judge Wolfson did in the <u>P.R.</u> matter, this

Court will deny the defendant's motion without prejudice.  Because there is an unresolved factual

issue regarding the reasonableness, prevailing party, and significant role inquiries, summary

judgment as to plaintiff's request for fees and costs seems inappropriate at this time.

However, should the case proceed following the hearing on March 17, 2006, the parties

may re-file properly supported summary judgment motions.[5]  If the Plaintiff seeks to file a new

motion seeking summary judgment on her claim for fees and costs, however, the Court will

demand, in accordance with the approach taken by Judge Wolfson in the <u>P.R.</u> matter, that the

following terms must be met:

> (1) The Plaintiff (S.W.) must submit a sworn certification under penalty of perjury
> that she, and not Tracee Edmondson, personally prepared all further motions,
> affidavits, and other legal papers filed in this case;
>
> (2) Tracee Edmondson must submit a sworn affidavit or certification under
> penalty of perjury that she has not prepared any motions, affidavits, or other legal
> filings in this case;
>
> (3) Edmondson must submit a new bill for her fees in which she clearly
> distinguishes between compensable time spent in consultation and
> noncompensable time spent as a legal advocate or representative;
>
> (4) Along with any newly filed summary judgment motion, the Plaintiff must
> submit (a) evidence regarding the prevailing market rates in the community for lay

---

[5] The Court's prior order denying Plaintiff's Motion for Summary Judgment specifically
stated that it did so only on grounds that Plaintiff had failed to submit proper evidence of the
reasonableness of the fees sought. (<u>See</u> Order dated 8/2/05, n.1.)  Clearly, the Order did not find
that Plaintiff was not entitled to any fee award.  Therefore, should this matter proceed following a
hearing on the unauthorized practice of law issue, the Plaintiff, as well as the Defendant, will be
allowed to present fully supported motions for summary judgment in accordance with the terms
set forth in the accompanying Order issued this date.

educational consultants, (b) evidence establishing that plaintiff is a prevailing party within the meaning of the IDEA, and (c) evidence establishing that Edmondson's services were necessary in obtaining a favorable outcome for Plaintiff in the administrative process.

## IV.  CONCLUSION

For the foregoing reasons, the Court will deny the Defendant's motion without prejudice.

The accompanying Order will issue today.


Dated:   2-24-06                                        s/ Robert B. Kugler
                                                        ROBERT B. KUGLER
                                                        United States District Judge